Joseph W. Cotchett (SBN 36324)
Brian Danitz (SBN 247403)
Tyson C. Redenbarger (SBN 294424)
Julia Peng (SBN 318396)
Reid Gaa (SBN 330141)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
bdanitz@cpmlegal.com
tredenbarger@cpmlegal.com
jpeng@cpmlegal.com
rgaa@cpmlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREDERICK CHANG, individually and on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>BEAM FINANCIAL, INC.,<br><br>               Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. **NEGLIGENCE**<br><br>2. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,** *CAL. CIV. CODE* § 1750, *ET SEQ.*<br><br>3. **VIOLATION OF THE UNFAIR COMPETITION LAW,** *CAL. BUS. & PROF. CODE* § 17200, *ET SEQ.*<br><br>4. **VIOLATIONS OF CALIFORNIA'S FALSE AND MISLEADING ADVERTISING LAW,** *CAL. US. & PROF. CODE* § 17500, *ET SEQ.*<br><br>5. **DECEIT BY CONCEALMENT,** *CAL. CIV. CODE* § 1710(3)<br><br>6. **BREACH OF IMPLIED CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

JURISDICTION AND VENUE ............................................................................... 2

PARTIES .................................................................................................................. 3

    I.      Plaintiff ...................................................................................................... 3

    II.     Defendant Beam Financial, Inc. ............................................................... 3

INTRADISTRICT ASSIGNMENT ......................................................................... 4

FACTUAL ALLEGATIONS .................................................................................... 4

    I.      Beam's Deceptive Business Model ........................................................... 4

    II.     Beam's Misleading And Deceptive Advertising ...................................... 6

    III.    Beam Took Advantage Of The Trust Placed In It By Consumers ........... 7

    IV.    Government Regulators Scrutinize Beam's Business Practices ............... 11

CLASS ACTION ALLEGATIONS ........................................................................ 12

CAUSES OF ACTION ........................................................................................... 14

    Count I
    Negligence .............................................................................................. 14

    Count II
    Violation of California's Consumer Legal Remedies Act
    *Cal. Civ. Code* § 1750, *et seq.* ........................................................... 15

    Count III
    Violation of the Unfair Competition Law
    *Cal. Bus. & Prof. Code* § 17200, *et seq.* .......................................... 17

    Count IV
    Violations of California's False and Misleading Advertising Law
    *Cal. Us. & Prof. Code* § 17500, *et seq.* ............................................ 19

    Count V
    Deceit by Concealment
    *Cal. Civ. Code* § 1710(3) ..................................................................... 21

    Count VI
    Breach of Implied Cause of Action ......................................................... 22

PRAYER FOR RELIEF .......................................................................................... 23

    I.      JURY DEMAND ................................................................................... 24

Plaintiff, Frederick Chang ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined herein), files this complaint against defendant Beam Financial, Inc. ("Beam") for, among other things, negligence, violation of the Consumer Legal Remedies Act ("CLRA"), violation of the Unfair Competition Law ("UCL"), deceit by concealment, and breach of implied contract. In support of these claims, Plaintiff alleges the following (a) upon personal knowledge with respect to the matters pertaining to himself; (b) and upon information and belief with respect to all other matters, based upon, among other things, the investigations undertaken by his counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. Plaintiff and class members deposited thousands of dollars with Beam, a mobile banking app, based on express promises that Beam would pay high interest and that their money would be accessible "24/7". Unfortunately for Plaintiff and the class, neither were true.

2. In an environment of historically low interest rates, Beam offered consumers the opportunity to earn interest on their savings accounts at rates many times greater than the average annual percentage yield. However, it was an offer that was too good to be.



3. After opening accounts and trusting Beam with their money, Plaintiff and the class members have not been paid the interest promised. Additionally, and more egregiously, Plaintiff and the class members have been prevented from accessing or withdrawing any of the money they deposited with Beam. Plaintiff and class members, to date, have been unable to reclaim thousands

1    of dollars of their own money.

2        4.    Concerned by Beam's failure to return his money, Plaintiff has repeatedly requested

3    information about the status of his withdrawal.  Beam has admitted fault but offers no assurances

4    that Plaintiff or class members will receive their money any time soon—writing there is "no

5    timeline" for when we will return your money.

6        5.    Additionally, Beam's failures directly contradict the most important promises Beam

7    makes to its customers.  According to Beam's website and app, Beam promises:

8            a.    "Daily interest"

9            b.    "No lockup"

10           c.    "you can easily make an unlimited number of free transfers into and out of

11                your Beam account at anytime."

12           d.    "Funds will arrive in 3—5 business days observing normal bank processing

13                time."

14           e.    "24/7 access" and

15           f.    "Peace of mind."

16       6.    Accordingly, Beam has breached its duties to Plaintiff and the class, violated

17   California laws, engaged in false advertising, and caused significant damages.

18       7.    The damage to Plaintiff and the class is not trivial—Plaintiff and the class members

19   have lost significant money from the unpaid interest and they have lost thousands of dollars that

20   were theirs.  They were also wrongly prevented from freely using their own money for other

21   purposes, which has resulted in lost opportunities and costs for the Plaintiff and class members.

22                          **JURISDICTION AND VENUE**

23       8.    This Court has jurisdiction over the subject matter of this action pursuant to 28

24   U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of

25   interest and costs, there are more than 100 putative Class members defined below and minimal

26   diversity exists because the majority of putative Class members are citizens of a state different

27   than Defendants.

28       9.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Beam is headquartered and where it developed and sold the banking services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Beam is headquartered in San Francisco and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

10.    This Court has personal jurisdiction over Beam purusant to 28 U.S.C §1332(a)(1). Pursuant to 28 U.S.C §1332(c)(1), Beam is a citizen of the state of California because it is a corporation with its principal place of business in San Francisco, California.  Plaintiff is domiciled in Naples, Florida, and is thus a citizen of the state of Florida.  Therefore, complete diversity exists between the parties as this action involves citizens of different states.

**PARTIES**

## I.    Plaintiff

11.    Plaintiff Frederick Chang resides in Naples, Florida.  Mr. Chang registered an account with Beam, downloaded Beam's mobile app on his smartphone, and deposited money with Beam  Mr. Chang has submitted numerous requests to withdraw his funds from his Beam account and, to date, has received no funds in response to his request.  Mr. Chang's Beam account also failed to accrue the interest it should have at times while he held money with Beam.

## II.    Defendant Beam Financial, Inc.

12.     Defendant Beam Financial, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.  Beam was founded in 2015.  Beam launched its services in September 2019, marketing itself as the "first mobile high-interest bank account designed for the 99%."

13.    Beam is a mobile "FinTech company focused on reinventing your bank account" by offering higher interest rates than a traditional bank.  As a mobile FinTech company, Beam offers consumers a banking app to download on their smartphones.  A user's funds deposited with Beam are purportedly FDIC-insured by banks, and Beam charges no fees, and no minimum balance or lockups.  As Beam explains on its website, a "Beam account is a bank account, NOT

an investment account."

**INTRADISTRICT ASSIGNMENT**

14.     In compliance with Local Rule 3-2(b), Plaintiff requests that this action be assigned to the San Francisco Division of this District because a substantial part of the events or conduct giving rise to the claims in this action occurred in the County of San Francisco.

**FACTUAL ALLEGATIONS**

## I.     Beam's Deceptive Business Model

15.     Beam is a mobile FinTech company whose goal was to be the first high interest bank account for millenials.  "FinTech" is a portmanteau of the terms "finance" and "technology"—referring to the industry that seeks to utilize technology to enhance or automate financial services and processes.  Although the FinTech industry is not a new one, it has evolved very quickly.  Like other FinTech businesses, Beam seeks to disrupt the financial industry by using innovation and technology to compete with traditional financial firms in the delivery and use of financial services.

16.     As part of its strategy, Beam targeted middle-class Americans with savings deposited with banks earning just 0% to 1% a year.  Beam accounts come with no fees or minimums and can be opened with as little as $1.  However, Beam limits deposits to a maximum of $15,000.

17.     Beam has "186,963 subscribers and counting."

18.     Beam account holders purportedly earn interest on a daily basis.  Beam determines the earnings payout for a particular Beam account at the end of each day based on the interest rate for that account as reflected in Beam's records.

19.     As Beam notes on its website, a Beam account "is a bank account, NOT an investment account" and deposited funds are held in a Demand Deposit Account.  According to Beam, this means that customers will not "have to lock [their] money away and be exposed to investment loss risk."

20.     In an attempt to gamify the banking industry, Beam created "Billies."  Billies are tools that customers can use to increase their Beam account's interest rate above the daily

minimum rate.  According to Beam, customers can earn Billies by "inviting friends to subscribe to [Beam's] mailing list, etc."  Using Billies, Beam promises users that they can increase their daily interest rate up to **7.00%** for each day.  However, the daily rate is reset to the minimum rate at the beginning of each day.



21.    To further entice customers to place their trust in Beam, Beam promises that "funds deposited through Beam are ALWAYS FDIC-insured by member banks to the full amount." According to Beam, funds in a Beam account are transmitted to FDIC-insured, interest-bearing accounts at one or more participating banks.  This aspect of the business model involves use of what is known as a sweep account.  This arrangement "sweeps" Beam's deposits into a network of FDIC-insured banks each day and allows Beam to collect interest or fees on the deposits that it can then pass on to its customers.

22.    According to Beam's website, Beam makes money "through software-as-a-service revenues from financial institutions."

## II. Beam's Misleading And Deceptive Advertising

23.    Beam advertised to customers that its banking services are an easier and more financially lucrative alternative to those provided by a traditional bank. "A Bank App That Pays You Daily" is prominently displayed at the top of Beam's website homepage. This claim is followed by the promise "All growth. Earn up to 4% APY."



| ALL GROWTH | NO LOCKUP | ZERO FEES | PEACE OF MIND |
|---|---|---|---|
| Get paid daily, in your sleep. | 24/7 access. No minimum. | Free means free. No asterisks. | Bank-level security. Funds FDIC-insured. |

24.    Beam follows up these bold statements by further promising "Get paid daily, in your sleep," "No Lockup. 24/7 Access," and "Peace of Mind. Beam promises that "funds deposited through Beam are ALWAYS FDIC-insured by member banks to the full amount."

25.    Beam also touts how easy and accessible its banking services are, promising customers they "you can easily make an unlimited number of free transfers into and out of your Beam account at any time. Funds will arrive in 3—5 business days observing normal bank processing time."

26.    Beam advertises financial returns greater than that of a traditional bank. Beam explains that "[t]raditional banks often earn 4–8% a year on your money but only give you an average of 0.01% a year. These banks often have many costs—excessive executive bonuses, large advertising budgets, and costly downtown bank branches, etc." Beam immediately follows this statement by promising customers more money if they use Beam's services, saying "without these costs Beam is able to pass on greater savings to you."

27.    Beam also explains that "if you deposit money with the bank that offers you anything less than 2.8% a year, you are losing money to inflation. It's a leaky bucket, and that slow bleeding of your cash really adds up over time." In order to capitalize on this concept, Beam explains that "Beam is proudly here to help you stop the bleeding"—all while promising

customers they can "[e]arn up to 4% APY."

28.  Beam further advertises the prospect of exceptionally high interest rates, promising customers they can "boost the APY to as high as 7% each day" using Beam's Billie system.  In an effort to make this interest rate seem realistically attainable, Beam advertises that customers "can effortlessly collect a free billie each day, and if [customers] invite a friend to subscribe to the mailing list on [Beam's] website, [customers] can earn 10 Billies that be saved and used later." Beam concludes by promising "[t]he more you invite, the more you earn.  You heard it right.  It's just that simple." Beam's website also asserts that users "can permanently unlock higher [interest rates] (e.g. up to a minimum of a 4%!)" and that "interest is accrued and paid daily."



### III.  Beam Took Advantage Of The Trust Placed In It By Consumers

29.  Through each the advertisements described herein, Beam has deceived Plaintiff and members of the class regarding the nature and quality of Beam's banking services.  Beginning in at least as early as March 2020, Beam began having trouble processing customer withdrawals. Customers who trusted Beam and relied on its promises of unlimited transfers in and out of their Beam account at any time have learned of the falsity of this promise.

30.  Plaintiff and members of the class have submitted requests through their Beam mobile apps to withdraw funds from their accounts and have thus far not received those funds.  In some instances, withdrawal requests have been pending for months.

31.  A spokeswoman for Beam said in a statement that it is difficult to give an exact date

when customers will receiver their funds.[1]  However, in order to conceal its misconduct, Beam has placed the blame for its failure to process withdrawal requests on a series of ever-changing external causes.

32.    First, Beam blamed the delay in processing withdrawal requests on the Covid-19 pandemic, telling customers "due to higher transaction volumes that our banking partners are handling (due to the coronavirus)."

33.    Then, on October 27, 2020, Beam issued a statement to Beam account holders in which it acknowledged that problems had persisted for "the past few months."  In that statement, Beam furthered its concealment scheme by blaming its network of intermediaries for the delays, in particular its ACH vendor Dwolla.  Specifically, Beam told account holders that:

> A few members of the Beam community fraudulently took advantage of mechanics around the ACH system and manipulated deposit and withdrawal actions. Specifically, they attempted to divert funds which are processed through the Automated Clearing house network, the central clearing facility for all Electronic Fund Transfer transactions in the United States . . . We assure you that all your funds deposited via beam remain safe and secure with the FDIC-insured banks where your funds are placed . . . We will begin processing outstanding customer withdrawals tomorrow. We expect our ACH payment provider to confirm and authorize the remaining withdrawals as early as Friday, October 30 . . . We expect all requested withdrawals to be made to our customers' linked bank accounts within the next two weeks.

34.    On November 9, 2020, Beam subsequently released another statement to Beam account holders in which it promised that Dwolla and Beam's financial institution partner, Huntington National Bank, would "release the temporary freeze on [Beam account holder] funds as early as this coming week."  In this statement Beam maintained that "there is simply no other way for Beam to allow our customers to access funds other than going through either Dwolla or

---

[1] Scott Cohn and Dawn Giel, *Despite Promises, Beam Bepositors Still Get Access to Their Money. Now the Lawsuits Have Begun*, CNBC, Nov. 10, 2020, *available at* https://www.cnbc.com/2020/11/10/beam-users-still-cant-get-their-money-now-the-lawsuits-have-begun.html?__source=iosappshare%7Ccom.microsoft.Office.Outlook.compose-shareextension (last accessed November, 10, 2020).

Huntington National Bank . . . ." Again, Beam attempted to conceal its role in the delay of processing withdrawal requests from Beam account holders by blaming its vendors. Beam claimed to have "sent several requests to Dwolla to ask for release of funds for a number of urgent transactions," but that "Dwolla has not yet acted on these requests." Beam further claimed that it "had sent requests to Huntington National Bank to release funds to Beam customers via other methods (mailed check or wire, etc.) but have not been successful." In a final abdication of responsibility, Beam falsely told its account holders, "[i]t has felt as frustrating and powerless to us as it must have been for you, not able to influence the release of these funds."

35.    Dwolla, however, disputes Beam's characterization of its conduct. In a statement made to CNBC, Dwolla said that it decided to terminate its service agreement with Beam on October 1, 2020 after it held discussions with Beam, and Huntington National Bank.[2] Based on these discussions, **Dwolla suspected that activity on the Beam application might harm consumers.** Moreover, Dwolla stated that its suspension of services to Beam does not prevent Beam from returning funds to consumers in any other manner Beam might choose.[3]

36.    Beam changed its story a number of times to justify why customers like Plaintiff and class members could not promptly withdrawal their deposited funds. In September 2020, Beam told the Better Business Bureau that some withdrawals were delayed because of a "bank partner."[4] Soon thereafter, Beam users received an email from Beam in which the withdrawal delays were blamed on Beam's provider for Automated Clearing House ("ACH") electronic fund transfers, Dwolla.

37.    Dwolla is not alone. Other partners have terminated their relationship with Beam as well. R&T, a vendor responsible for transferring deposits made on the Beam app to a network of FDIC-insured banks, has stated that it believes Beam's operational or technical issues may be the

---

[2] Lorie Konish, Scott Cohn, & Dawn Giel, *This Start-up Promised Higher Interest Rates on Savings. Now Some Customers are Struggling to Get Their Money Back*, CNBC, Oct. 28, 2020, *available at* https://www.cnbc.com/2020/10/28/beam-promised-higher-interest-rates-now-customers-want-their-money-back.html (last accessed November 8, 2020).

[3] *Id.*

[4] *Id.*

cause for the withdrawal delays experienced by Beam customers.[5]

38.    Dwolla, Huntington National Bank, and a third vendor, Stable Custody Group, have filed a lawsuit against Beam. The lawsuit states that Beam's statements to its customers and the media "were not accurate" and, despite Beam's claims, Dwolla never placed a hold on any Beam customer funds. The lawsuit further asserts that, in fact, Dwolla never held any customer funds in the first place.[6]

39.    Dwolla, Huntington National Bank, and Stable Custody Group's lawsuit also alleges that "[a]ny delays in customers receiving their funds was solely due to Beam's delays." In addition, the lawsuit reveals that Beam's claim that the company is "working 24/7" to solve the problems is false, as Beam has yet to provide any instructions to the vendors for the return of customers' funds. Critically, the suit alleges that only Beam has the information about its customers identities and their deposits that would be necessary to return the millions of dollars in customer deposits.[7]

40.    Aside from Beam's failure to process withdrawal requests, it has also failed to pay to interest as promised.  Indeed, some Beam account holders who relied on Beam's advertising that interest would accrue and be paid daily now report that their Beam accounts have stopped gaining interest at all.

41.    According to a report conducted by CNBC TV and CNBC.com, these are common complaints amongst Beam account holders, with the Federal Trade Commission ("FTC") disclosing that it has received at least 68 complaints from customers who say they have encountered delays or have been unable to access their funds.[8]  Similarly, the Better Business

---

[5] *Id.*

[6] Scott Cohn and Dawn Giel, *Despite Promises, Beam Bepositors Still Get Access to Their Money. Now the Lawsuits Have Begun*, CNBC, Nov. 10, 2020, *available at* https://www.cnbc.com/2020/11/10/beam-users-still-cant-get-their-money-now-the-lawsuits-have-begun.html?__source=iosappshare%7Ccom.microsoft.Office.Outlook.compose-shareextension (last accessed November, 10, 2020).

[7] *Id.*

[8] Lorie Konish, Scott Cohn, & Dawn Giel, *This Start-up Promised Higher Interest Rates on Savings. Now Some Customers are Struggling to Get Their Money Back*, CNBC, Oct. 28, 2020, *available at* https://www.cnbc.com/2020/10/28/beam-promised-higher-interest-rates-now-customers-want-their-money-back.html (last accessed November 8, 2020).

Bureau and the Apple App Store contain a litany of complaints articulating such examples of Beam's conduct.

42.     Furthermore, Beam's statement that money deposited into a Beam account is "ALWAYS FDIC-insured" is false.  Under Beam's arrangement with its vendors, including those financial institutions that actually hold customer's funds, customer funds are only FDIC-insured if one of the banks in the chain fails.  However, the FDIC insurance does not apply if Beam fails.

43.     In short, Beam's promise of a simple and easy transaction process and access to high interest bank accounts was false.  Trusting that Beam's services were what Beam advertised them to be, average Americans deposited their hard-earned money into Beam accounts in the hope of generating additional money to help their families and pay their bills.  Instead of providing what advertized, Beam took advantage of these individuals for its own profit and personal gain.

**IV.    Government Regulators Scrutinize Beam's Business Practices**

44.     Beam's business practices have not escaped the scrutiny of government regulators.  On July 6, 2018, the FTC sent a letter to Beam requesting the voluntary production of information and documents in connection with the beta version of Beam's mobile banking app.  According to the FTC, that inquiry focused on whether consumers were receiving the advertised interest rate returns on their deposits.  Although the FTC ultimately determined that no further action was warranted at that time, it has since re-focused its attention on Beam and its business practices.

45.     On May 21, 2020, the FTC issued civil investigative demand ("CID") to Beam.  This CID was issued in support of an investigation into whether Beam has engaged in deceptive or unfair practices related to its financial products and services, including the accessibility of consumers funds, the advertised rates of return and interest, and the functionality of the company's mobile apps.  This investigation remains ongoing.

46.     Similarly, CNBC reports that the FDIC is "reaching out to Beam Financial to request additional information regarding its relationship with insured institutions and its claims to be able to offer federal deposit insurance through its app."  The FDIC further stated that it would "coordinate with other agencies and take the appropriate action" permitted under federal law if

1  Beam's claims turn out to be false.[9]

2                              **CLASS ACTION ALLEGATIONS**

3          47.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of

4  Civil Procedure, on behalf of a proposed class (the "Class"), defined as

5                  All persons who established a Beam account and deposited money therein
6                  during the period from and including September 1, 2019 through the
                   present.

7          48.    This definition specifically excludes Beam, any of the Beam's parent companies,

8  subsidiaries, and affiliates, and any of the Beam's officers, directors, management, employees,

9  subsidiaries, affiliates or agents.  Plaintiff reserves the right to expand, modify, or alter the class

10 definition in response to information learned during discovery.

11         49.    Plaintiff properly brings this action as a class action under Rule 23(a) for the

12 following reasons:

13         a.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Class are so

14                numerous that joinder of all members would be impracticable.  Based on

15                information and belief, Plaintiff alleges that the Class includes tens of

16                thousands of members;

17         b.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3**)):

18                There are questions of law and fact common to the Classes which

19                predominate over any questions that may affect individual Class Members.

20                Such questions of law and fact common to the Classes include, but are not

21                limited to:

22                i.     whether Beam's advertising misrepresented the nature and quality of

23                       its banking services;

24                ii.    whether Beam acted negligently;

25                iii.   whether Beam violated the CLRA;

26                iv.    whether Beam violated the UCL;

27                v.     whether Beam illegally concealed its conduct;

28  [9] *Id.*

      vi.     whether Plaintiff and the class were harmed as a result of Beam's conduct; and

      vii.    whether Plaintiff and the class are entitled to injunctive relief prohibiting Beam from continuing its unfair, unlawful, and deceptive business practices, as well as its false advertising.

    c.    **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the other Class members because, among other things, (a) Plaintiff and the other Class members deposited money into Beam accounts; and (b) in its uniform misconduct alleged above, mispresented the nature and quality of its banking services. Plaintiff and other Class members are advancing the same claims and based on the same legal theories. There are no defenses that are unique to Plaintiff;

    d.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff is an adequate representative of the Class because (a) his interests do not conflict with the interests of the other Class members he seeks to represent; (b) he has retained counsel competent and experienced in complex class action litigation; (c) he will prosecute this action vigorously; and (d) he has no interests that are contrary to or in conflict with the interests of other Class members.;

50. This action is properly brought as a class action under Rule 23(b) for the following reasons:

    a.    **Class Action Status (Fed. R. Civ. P. 23(b)(1)):** Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by Class Members would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by Class Members would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the

interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

b.   **Declaratory and Injunctive Relief (Fed. R. Civ. P. 23(b)(2)):** Certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

c.   **Superiority (Fed. R. Civ. P. 23(b)(3)):** Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

d.   The Classes are ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each Class Member were infringed or violated in the same fashion;

## CAUSES OF ACTION

### <u>Count I</u>
### Negligence

51.   Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

52.   Beam owed a duty to Plaintiff and the other Class members to exercise reasonable care in the banking services offered to Beam account holders. To fulfill this duty, Beam is obligated to implement and maintain adequate measures to safeguard its users' monetary deposits and not interfere with Beam account holders' ability to make financial withdrawals from their Beam account.

53.   Plaintiff and the Class members used Beam's services in reliance on its exercise of due care and fulfillment of its duties.

54.   Beam, however, breached its duty by, among other things:

- Failing to implement adequate protections for Beam accounts such that fraud was perpetrated using Beam's services;

- Failing to process account withdrawals in a timely manner;

- Failing to pay interest; and

- Interfering with Beam account holders' access to and use of money deposited in their Beam account.

55.    Beam's misconduct is inconsistent with industry regulations and standards.

56.    Plaintiff and other Class members did not contribute to Beam's misconduct.

57.    The harm inflicted upon Plaintiff and other Class members was reasonably foreseeable to Beam.

58.    As a direct and proximate result of Beam's misconduct, Plaintiff and class members have been deprived of access to the money deposited into their Beam accounts and failed to receive the accrued interest thereon.

**Count II**
**Violation of California's Consumer Legal Remedies Act**
***Cal. Civ. Code* § 1750, *et seq.***

59.    Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

60.    Plaintiff and each Class Member are "consumers" under the CLRA, *see* CAL. CIV. CODE § 1761(d).

61.    Beam is a "person" as defined by the CLRA, see CAL. CIV. CODE § 1761(c).

62.    Beam's marketing and sale of the Beam app is the sale of a "good" and "service" to consumers within the meaning of the CLRA, see CAL. CIV. CODE §§ 1761(a)–(b), 1770(a).

63.    Plaintiff and Class members used Beam's services for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

64.    The CLRA protects consumers against unfair and deceptive practices and is intended to provide an efficient means of securing such protection.

65.    As detailed herein, Beam promised to provide the Plaintiff and the class access to bank accounts that would accrue and pay interest daily and could be accessed at any time and

from which an unlimited number of transfers could be made. Beam violated the CLRA by, among other things:

- Failing to pay interest accrued by Beam accounts on a daily basis;
- Failing to process account withdrawals in a timely manner; and
- Interfering with Beam account holders' access to and use of money deposited in their Beam account.

66. Beam's conduct is deceptive and unfair and violates Subsection 1770(a) of the California Civil Code because:

- Beam represented that its services had characteristics, uses, and benefits it did not have in violation of Subsection (a)(5); and
- Beam represented its products were of a particular standard, grade, or quality when they were of another in violation of Subsection (a)(7).

67. Beam's unfair or deceptive acts and practices were capable of deceiving a substantial portion of the public. Beam did not disclose that it was not capable of paying interest on a daily basis or that it could not process withdrawals in a timely manner because it knew that consumers would not use its products or services, and instead would use other products or services, had they known the truth.

68. Beam had a duty to disclose the truth about its banking services because it is in a superior position to know whether, when, and how interest will be paid on Beam accounts and the time in which withdrawals from Beam accounts will be processed.

69. Plaintiff and the Class members could not reasonably have been expected to learn or discover Beam's inability to pay interest accrued on Beam account's on a daily basis or Beam's interference with Beam account holders' access to and use of money deposited in their Beam account.

70. The facts concealed by Beam are material because a reasonable consumer would have considered them to be important in deciding whether to use Beam's banking services.

71. Plaintiff and the Class members reasonably expected that Beam would (a) pay interest accrued on Beam accounts on a daily basis, (b) process in a timely manner account

withdrawal requests by Beam account holders, and (c) not interfere with Beam account holders' access to and use of money deposited in their Beam account.

72.    Due to Beam's violations of the CLRA, Plaintiff and class members have been deprived of access to the money deposited into their Beam accounts and failed to receive on a daily basis the accrued interest thereon.

73.    On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and to engage in corrective advertising to alert consumers of these misrepresentations

74.    In accordance with Cal. Civ. Code § 1782(a), prior to the filing of this Complaint, Plaintiff's counsel served Defendant with notice of these CLRA violations by certified mail, return receipt requested.  If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CLRA violations.

### Count III
### Violation of the Unfair Competition Law
### *Cal. Bus. & Prof. Code § 17200, et seq.*

75.    Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

76.    Beam is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

77.    Beam engaged in unfair, unlawful, and fraudulent business practices within the meaning of the UCL, CAL. BUS. & PROF. CODE §§ 17200, et seq.

78.    Beam's "unfair" acts and practices include:

- Knowingly advertising banking services that were not capable of accruing and paying interest on a daily basis, yet advertising them as capable of such;

- Knowingly advertising banking services that were not capable of processing withdrawal requests within three to five days, yet advertising them as capable of such;

- Interfering with Beam account holders' access to and use of money deposited in their Beam account;
- Failing to pay interest accrued on Beam accounts on a daily basis; and
- Concealing material information Beam account holders regarding the true basis for the delay in processing requests to withdraw funds from Beam accounts.

79.     Beam has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, the FAL, and California common law.

80.     Beam's unlawful, unfair, and deceptive acts and practices include:

- Knowingly advertising banking services that were not capable of accruing and paying interest on a daily basis, yet advertising them as capable of such;
- Knowingly advertising banking services that were not capable of processing withdrawal requests within three to five days, yet advertising them as capable of such;
- Interfering with Beam account holders' access to and use of money deposited in their Beam account;
- Failing to pay interest accrued on Beam accounts on a daily basis; and
- Concealing material information Beam account holders regarding the true basis for the delay in processing requests to withdraw funds from Beam accounts.

81.     Beam violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising, interfering with Beam account holders' access to and use of money deposited in their Beam account, and by omitting material facts from Beam account holders regarding the basis for the delay in processing requests to withdraw funds from Beam accounts. As alleged more fully herein, Beam's marketing of its banking services, its failure to pay interest accrued by Beam accounts on a daily basis, its interference with Beam account holders' access to and use of money deposited in their Beam account, and its concealment of the true basis for the delay in processing requests to withdraw funds from Beam accounts, violated Cal. Civ. Code § 1750, et seq., common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful

business acts and practices. Beam's conduct is ongoing and continues to this date.

82.     Beam violated § 17200's prohibition against unfair conduct by failing to inform its customers interest would not accrue and be paid daily, failing to inform customers that withdrawals from their Beam account would be not processed in a timely manner; interfering with Beam account holders' access to and use of money deposited in their Beam account; engaging in a pattern or practice of concealing those facts.  This conduct is substantially injurious to consumers, offends public policy (including the violaitons of laws intended to protect consumers), is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit.  Beam engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available.

83.     Beam's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, class members into utilizing Beam's banking services under the belief that interest would accrue and be paid daily, withdrawals from their Beam account would be processed in a timely manner, and that Beam would not interfere with account holders' access to and use of money deposited in their Beam account.

84.     Beam's representations and omissions were material because they were likely to deceive reasonable consumers.

85.     As a direct and proximate result of Beam's unfair, unlawful, and fraudulent acts and practices, Plaintiff and class members were injured and lost money or property, as they have been deprived of access to the money deposited into their Beam accounts and failed to receive on a daily basis the accrued interest thereon.

86.     Plaintiff and Class members seek restitution and injunctive relief prohibiting Beam from continuing its unfair, unlawful, and deceptive business practices, as well as its false advertising.

**Count IV**
**Violations of California's False and Misleading Advertising Law**
*Cal. Us. & Prof. Code § 17500, et seq.*

87.     Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

**CLASS ACTION COMPLAINT**                    19

88.    Beam's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public.  Beam misrepresented its banking services and concealed true basis for why requests for withdrawals from Beam accounts were not being processed in a timely manner.

89.    By its actions, Beam disseminated uniform advertising Beam's banking services. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

90.    The above-described false, misleading, and deceptive advertising Beam disseminated continues to have a likelihood to deceive in that Beam failed to disclose the true nature of the frequency with which interest would accrue and be paid out on a Beam account, the ease and frequency with which requests to withdraw funds from a Beam account could be made, and the time in which requests to withdraw funds from a Beam account would be processed. Instead, Beam continued to misrepresent the true nature of its banking services, continuing to deceive consumers.

91.    Beam continued to misrepresent to consumers that Beam accounts accrued and paid interest daily, that requests to withdraw funds therefrom would be processed in 3-5 days, and that Beam account holders would have access to their funds and could make unlimited transfers in and out of a Beam account.  However, Beam's banking services were not capable of these actions. Had Beam disclosed those issues, rather than falsely advertising the true nature and quality of its services, consumers would have not deposited money into a Beam account or utilized its banking services.

92.    In making and disseminating the statements alleged herein, Beam knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiff and other class members based their decision to use Beam's services on Beam's omitted material facts.  Plaintiff and class members have been deprived of access to the money deposited into their Beam accounts and failed to receive the accrued interest on their Beam account.

93.    The misrepresentations and non-disclosures by Beam of the material facts described

and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code § 17500, et seq.

94.     As a result of Beam's wrongful conduct, Plaintiff and class members have been deprived of access to the money deposited into their Beam accounts and failed to receive on a daily basis the accrued interest thereon.  Plaintiff and the class members are therefore entitled to restitution as appropriate for this cause of action.

95.     Plaintiff and Class members seek injunctive relief prohibiting Beam from continuing its unfair, unlawful, and deceptive business practices, as well as its false advertising. Plaintiff intends to amend this complaint to seek damages.

**Count V**
**Deceit by Concealment**
*Cal. Civ. Code* **§ 1710(3)**

96.     Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

97.     As detailed herein, Beam failed to disclose and actively concealed information about the capabilities of its banking services, as well as the true basis for the delay in processing requests to withdraw funds from Beam accounts.  As Beam knew, its knowledge was exclusive to the company and was not generally known to the public or to Beam account holders, and had a duty to disclose the fact to Plaintiff and Class members.

98.     Beam knew that its banking services were materially worse than it represented, as well as the fact that its ACH vendor Dwolla was not the reason that requests to withdraw funds from Beam accounts were not being processed in a timely manner.  Beam knew that its banking services were materially worse than what Plaintiff and Class members reasonably expected and intentionally concealed or suppressed the fact with intent to defraud Plaintiff and Class members.

99.     The information Beam concealed was material in that it was important to reasonable persons, and Plaintiff and Class members would not have acted as they did if they had known of the concealed or suppressed fact.  As a result, Plaintiff and class members have been deprived of access to the money deposited into their Beam accounts and failed to receive on a daily basis the accrued interest thereon.   Additionally, Plaintiff and Class members would have taken the

appropriate steps to protect themselves had they known of Beam's inadequate banking services.

**Count VI**
**Breach of Implied Cause of Action**

100.    Plaintiff incorporates the foregoing allegations as if fully set forth here.

101.    Beam provided banking services to Plaintiff and members of the Class. In exchange, Beam benefits from Plaintiff and the class because it makes money through software-as-a-service revenues from financial institutions.

102.    Beam acknowledged these benefits and accepted or retained them.

103.    In using Beam's banking services, Plaintiff and Class members continually provide Defendant with the ability and opportunity to make money through software-as-a-service revenues from financial institutions.

104.    By providing that information, and upon Beam's acceptance of that information, Plaintiff and Class members, on the one hand, and Beam, on the other, entered into implied contracts, separate and apart from Beam's terms of service, under which Defendant agreed to and was obligated to take reasonable steps to ensure that Beam account holders could withdraw funds from their Beam accounts and that Beam accounts would be paid interest thereon.

105.    All parties understood that such access and interest accrual were integral and essential to Beam's entire line of business.

106.    Under those implied contracts, Beam was obligated to provide Plaintiff and Class members with banking services that were suitable for their intended purpose of providing access to funds deposited in a Beam account and paying interest thereon, rather than banking services that denied Beam account holders with access to their deposited funds and failed to pay interest thereon.

107.    Without such implied contracts, Plaintiff and Class members would not have used Beam's banking services and would not have conferred benefits on Beam, but rather would have chosen alternative banking services that did not deny access to funds or fail to pay interest thereon.

108.    Plaintiff and Class members fully performed their obligations under these implied contracts.

109.    As described throughout, Beam did not take reasonable steps to provide access to Plaintiff's and Class members' deposited funds or to pay interest thereon. In fact, Defendant willfully violated those interests by denying Beam account holders access to the funds deposited into their Beam accounts and failing to pay interest thereon.

110.    Because Beam failed to take reasonable steps to provide Beam account holders with access to the funds deposited into their Beam accounts and pay interest thereon, Beam breached its implied contracts with Plaintiff and Class members.

111.    Defendant's failure to fulfill its obligation to provide Beam account holders with access to the funds deposited into their Beam accounts and pay interest thereon resulted in Plaintiff and Class members receiving banking services that were of less value than they provided consideration for.

112.    Stated otherwise, because Plaintiff and Class members provided valuable consideration for banking services, they did not receive the full benefit of their bargain.

113.    As a result of Defendant's conduct, Plaintiff and members of the Class have suffered actual damages in an amount equal to the difference in the value of the banking services they provided valuable consideration for and the banking services they received.

114.    Accordingly, Plaintiff, on behalf of himself and Class members, seeks an order declaring that Defendant's conduct constitutes a breach of implied contract, and awarding them damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all members of the Class, respectfully requests that the Court enter judgment in favor of them and against Beam:

A.    Certifying this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

B.    Declaring that Beam's conduct alleged in this complaint is unfair, unlawful, and fraudulent in violation of the CLRA, FAL, and the UCL, and that Beam is liable for negligence and concealment;

C.    Enjoining Beam from engaging in the negligent, unfair, unlawful, and fraudulent

business practices alleged herein.

D.      Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.      Awarding Plaintiff and Class members actual damages, compensatory damages, statutory damages, restitution, and statutory penalties, in an amount to be determined;

F.      Awarding Plaintiff and Class members costs of suit and attorneys' fees, as allowable by law; and

G.      Granting such other and further relief as this court may deem just and proper

## I.    JURY DEMAND

Plaintiff demand a jury trial on all issues so triable.

Dated: November 10, 2020                    Respectfully Submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

*/s/ Brian Danitz*
Joseph W. Cotchett
Brian Danitz
Tyson C. Redenbarger
Julia Peng
Reid Gaa

*Counsel for Plaintiff*